UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLYDE L. YOUNGER, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:25-cv-12090-IT |
| | * |
| PARAMOUNT GLOBAL, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

December 16, 2025

TALWANI, D.J.

Plaintiff Clyde L. Younger, proceeding *pro se*, initiated this action in Suffolk Superior Court for alleged constitutional violations from the airing of an interview with Vice President Kamala Harris on the television program 60 Minutes on October 7, 2024 (the "Harris Interview"). Defendant Paramount Global ("Paramount") removed the case to federal court. See Not. of Removal [Doc. No. 1].[1] Younger subsequently filed his Verified Complaint [Doc. No. 5].[2]

Now pending before the court are both Paramount's Motion to Dismiss [Doc. No. 24] the Verified Complaint [Doc. No. 5] for lack of standing and failure to state a claim, and Younger's Motion for Leave to File [a Second] Amended Complaint [Doc. No. 36]. For the reasons set

---

[1] Younger also listed CBS News as a Defendant in his original State Court Complaint [Doc. No. 1-1]. Paramount's Notice of Removal [Doc. No. 1] explained that CBS News is not a legal entity capable of being sued. See id. at 1 n.1.

[2] Plaintiff's filing of the Verified Complaint [Doc. No. 5] without leave of court was permissible under Fed. R. Civ. P. 15(a)(1)(A), which provides that "[a] party may amend its pleading once as a matter of course no later than . . . 21 days after serving it, or . . . 21 days after service of a motion [to dismiss]." The Verified Complaint [Doc. No. 5] removed CBS News as a Defendant.

forth below, the Motion to Dismiss [Doc. No. 24] is GRANTED, and the Motion for Leave to File [a Second] Amended Complaint [Doc. No. 36] is DENIED.

**I.     Motion to Dismiss**

    **A.     Legal Standard**

        1.     Lack of Article III Standing

A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Katz v. Pershing, LLC, 672 F.3d 64, 70–72 (1st Cir. 2012). The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; see Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan, 504 U.S. at 560–61). "The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that [he] asserts." Katz, 672 F.3d at 71 (citing Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006)). And where the question of standing is based on the pleadings, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016).

An order dismissing a complaint under Rule 12(b)(1) "is appropriate only when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003). The court "accept[s] the well-pleaded factual averments contained" in the pleadings and "indulg[es] all reasonable inferences in the plaintiff's favor." Id.

2. Failure to State a Claim under 12(b)(6)

In assessing a complaint under the 12(b)(6) standard, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level[.]" Id. at 555 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For *pro se* filers, a complaint is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**B.    Facts as Alleged in the Verified Complaint**

Younger is a registered voter and former elected official. Ver. Compl. ¶ 1 [Doc. No. 5]. He alleges that CBS, owned by Paramount Global, aired an interview with Vice President Kamala Harris on 60 Minutes on or about October 7, 2024. Id. ¶ 17. Younger alleges that the interview "was viewed with heightened public attention and civic interest." Id. ¶ 18.

According to Younger, the "editorial handling of Vice President Harris's public statements [in the interview]—particularly through compression, omission, and juxtaposition across platforms—materially impaired the electorate's ability to understand federal executive policy and its constitutional boundaries." Id. ¶ 20. Younger contends that these harms qualify as "[b]roadcast distortion" and ultimately "undermine[d] citizens' capacity to advocate[.]" Id. ¶¶

3

20–21. Without further elaboration, Younger generally claims "this action arises under the First and Fourteenth Amendments to the United States Constitution." Id. ¶ 4.

Younger seeks a declaratory judgment that the airing of the edited interview "constituted a breach of constitutional principles safeguarding transparent public discourse." Id. ¶ 23. Younger also seeks injunctive relief directing Paramount to disclose the "full scope and duration" of the interview and to "[p]ublish an annotated transcript disclosing edits made for 'time, space, and clarity,' with specific reference to any civic or constitutional language removed[.]" Id. ¶ 24. Finally, Younger requests that any monetary damages "awarded by the Court be directed toward public jurisdictions and voter education programs[.]" Id. ¶ 25.

### C.  Discussion

#### 1.  Plaintiff Lacks Article III Standing

As a threshold issue, Paramount challenges Younger's standing, arguing his alleged injuries are insufficiently concrete to satisfy Article III's injury-in-fact requirement. Def.'s Mem. ISO Mot. to Dismiss 8 [Doc. No. 25] ("Def.'s Mem."). The court agrees. See Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (plaintiff "must show that [he] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'" (quoting Lujan, 504 U.S. at 560)). The only injuries Younger alleges are "broadcast distortion" and the "undermin[ing] [of] citizens' capacity to advocate." Ver. Compl. ¶¶ 20–21 [Doc. No. 5]. These injuries are insufficiently particularized to Younger. See Spokeo, Inc., 578 U.S. at 339; Huber v. Simon's Agency, Inc., 84 F.4th 132, 149 (3d Cir. 2023) ("[C]onfusion, without more, is not a concrete injury."). "Civic disorientation," Ver. Compl. ¶¶ 20–22 [Doc. No. 5], is a "generalized grievance" and Younger has failed to demonstrate how he has been affected in a "personal and individual way." Lyman v. Baker, 954 F.3d 351, 361 (1st Cir. 2020) (quotations omitted). Accordingly, pursuant to Rule 12(b)(1), the

court lacks subject matter jurisdiction to adjudicate Younger's claims. See Fed. R. Civ. P. 12(b)(1).

### 2. The Verified Complaint Fails to State a Claim

Even assuming Younger has Article III standing, the Verified Complaint [Doc. No. 5] fails to state a claim for which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To begin, the Verified Complaint [Doc. No. 5] does not clearly articulate any causes of action. In his opposition to the Motion to Dismiss [Doc. No. 24], Younger states that he is challenging "broadcast distortion and lack of electoral remedy[,]" but does not otherwise identify a cause of action for these allegations. Pl.'s Opp'n 1 [Doc. No. 35]. Because the Verified Complaint [Doc. No. 5] refers generally to violations of the First and Fourteenth Amendments, see id. ¶ 4, the court construes those alleged violations to comprise the gravamen of Younger's Complaint.

Younger fails to allege how the editing of the Harris Interview may have violated his First Amendment rights and instead makes broad accusations of "civic disorientation" resulting from "broadcast distortion[,]" which ultimately "undermine[d] citizens' capacity to . . . vote." Id. ¶¶ 20–22. Younger additionally alleges that "[t]he suppression of material facts hindered voters' ability to evaluate electoral implications with informed consent—a harm recognized in jurisprudence protecting the public's right to receive truthful information on matters of civic consequence." Id. ¶ 23. The court finds several deficiencies in Younger's First Amendment claim.

First, general allegations of civic disorientation from media editing are not cognizable claims under First Amendment jurisprudence. Second, Paramount is a private entity, and private entities, unlike state actors, are "not ordinarily constrained by the First Amendment[.]" Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 812 (2019). Even if this court were to

5

construe Younger's vague assertions as a cognizable First Amendment violation, Paramount's actions would likely be protected. See, e.g., Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels., 413 U.S. 376, 386 (1973) (First Amendment protects editorial discretion of media outlets); Miami Herald Publ'g Co. v. Tornillo, 418 U.S. 241, 258 (1974) (same); Denver Area Educ. Telecomms. Consortium v. FCC, 518 U.S. 727, 737–38 (1996) (same). The First Amendment protects Paramount's editorial discretion in editing and airing the Harris Interview. Thus, even if Younger were to have successfully alleged a First Amendment claim, Paramount's defense rebuts any alleged violation.

Regarding his remaining constitutional claim, Younger states "that specific omissions and editorial choices contributed to voter misunderstanding and constitutional injury under the Equal Protection Clause," Ver. Compl., Ex. A at 1 [Doc. No. 5-1], but he fails to elaborate further. The Fourteenth Amendment's Equal Protection Clause applies to government action. U.S. Const. art. XIV, § 1; Bolling v. Sharpe, 347 U.S. 497, 498–99 (1954) (discussing reverse incorporation via the Fifth Amendment). Again, Younger's allegations involve the editorial decisions of Paramount, a private entity. Ver. Compl. ¶ 16 [Doc. No. 5]. In the absence of any allegations sufficient to construe state action, the court finds that Younger's Fourteenth Amendment claim fails as a matter of law. Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005) (explaining when courts may deem private entities as state actors).

Accordingly, Paramount's Motion to Dismiss [Doc. No. 24] is GRANTED for lack of standing and for failure to state a claim.

## II.     Motion for Leave to File Second Amended Complaint

### A.     Legal Standard

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a pleading shall be freely granted "when justice so requires." Nevertheless, a motion for leave to amend may be denied in

cases of (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962). Futility is gauged by the same standard as legal sufficiency under Rule 12(b)(6). See Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).

### B. Facts As Alleged in the Proposed Second Amended Complaint

In the Proposed [Second] Amended Complaint [Doc. No. 36-1], Younger continues to allege First and Fourteenth Amendment violations. See id. at 2–3. The proposed amendments to the Verified Complaint [Doc. No. 5] refer more explicitly to Younger's constitutional claims. Proposed Am. Compl. at 2–3 [Doc. No. 36-1]. In alleging an Equal Protection violation, Younger refers to a $16 million settlement between President Donald Trump and Paramount and claims that this settlement "denied equal remedy to voters affected by the distortion[.]" Id. at 2. Additionally, Younger includes new facts about Paramount's merger with Skydance Media and states that the merger "coincided with the expansion of Paramount's legal defense team in this case, suggesting a coordinated strategy to preempt public remedy framing." Id. Regarding Paramount's defense counsel, Younger states that "Defendant has retained four attorneys, including nationally recognized media litigator Elizabeth A. McNamara . . . [h]er entry signals a defense posture focused on editorial immunity rather than voter accountability." Id.

In the Proposed [Second] Amended Complaint [Doc. No. 36-1], Younger asks the court to: (1) issue a "declaratory judgment that editorial distortion in electoral contexts constitutes constitutional harm to voters[;]" (2) issue an "injunction requiring Paramount Global to disclose editorial settlement terms and establish a public remedy fund[;]" (3) create "[s]tructural oversight to prevent future electoral distortion by media entities[;]" and (4) "grant any other relief the Court deems just and proper." Id. at 3.

7

**C.    Discussion**

The Proposed [Second] Amended Complaint [Doc. No. 36-1] suffers from the same deficiencies as the Verified Complaint [Doc. No. 5]. The Proposed Complaint is, therefore, futile, as Plaintiff fails to establish Article III standing and to state a claim cognizable under the color of law.

    1.    The Proposed Second Amended Complaint Fails to Allege an Injury-in-Fact

Younger again claims that Paramount engaged in editorial distortion, violating voters' "First Amendment[] protections for access to political speech and civic participation." Proposed Am. Compl. 2 [Doc. No. 36-1]. Like the alleged civic distortion claim in the Verified Complaint [Doc. No. 5], this injury is vague, conjectural, and untethered to any cognizable cause of action. See Spokeo, Inc., 578 U.S. at 339; Huber, 84 F.4th at 149.

None of the new facts alleged by Younger cure the defects discussed above. Younger claims that Paramount, by entering a $16 million settlement agreement with President Trump that arose from the Harris Interview, denied voters equal protection. See Proposed Am. Compl., Ex. A-1 at 2 [Doc. No. 36-3]; Proposed Am. Compl. 2 [Doc. No. 36-1]. He further asserts that "the absence of a public remedy" effectively violated voters' due process rights. Proposed Am. Compl. 3 [Doc. No. 36-1]. Because Younger continues to allege injury on behalf of "voters" and "the electorate," id. at 2–3, rather than injury particular to him, the court finds that the allegations of harm in the Proposed [Second] Amended Complaint [Doc. No. 36-1] are insufficiently concrete to satisfy Article III's injury-in-fact requirement. See Spokeo, Inc., 578 U.S. at 339.

    2.    Plaintiff's Second Amended Complaint Fails to State a Claim

In his Proposed [Second] Amended Complaint [Doc. No. 36-1], Younger again fails to state any claim for which the court can grant relief. Additionally, he neglects to include relevant facts that support his allegations. As in his Verified Complaint [Doc. No. 5], Younger broadly

8

claims First and Fourteenth Amendment violations arising from the editing of the Harris Interview. Proposed Am. Compl. 2–3 [Doc. No. 36-1]. He states that the "editorial distortion deprived voters of truthful electoral information, violating the First Amendment's protections for access to political speech and civic participation." Id. at 2. None of the new facts alleged by Younger demonstrate any state action, requisite for a First Amendment violation. See Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1271 (10th Cir. 1989) ("If the mere publication of an article based upon information obtained from government officials could constitute state action, private newspapers would be significantly discouraged from interviewing state officials to gather information on important public issues.").

Regarding his Fourteenth Amendment claims, Younger shifts focus from civic disorientation to the $16 million settlement between Paramount and President Trump, claiming that this settlement (1) denied voters equal protection and (2) denied voters their due process rights. See Proposed Am. Compl. 2–3 [Doc. No. 36-1]. Younger fails to show how this settlement resulted in any Fourteenth Amendment violations. The new facts Younger presents surrounding the settlement—i.e., the merger and the expansion of defense counsel—are irrelevant to the necessary element of state action, constructive or actual. See Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011). Therefore, Younger's allegations in the Proposed [Second] Amended Complaint [Doc. No. 36-1] fail to state a Fourteenth Amendment claim.

Where Younger's new allegations in the Proposed [Second] Amended Complaint [Doc. No. 36-1] are insufficient to cure the defects regarding standing and failure to state any claims in his Verified Complaint [Doc. No. 5], Plaintiff's Motion for Leave to File [a Second] Amended Complaint [Doc. No. 36] is DENIED as futile.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. No. 24] is GRANTED, and Plaintiff's Motion for Leave to File [a Second] Amended Complaint [Doc. No. 36] is DENIED.

IT IS SO ORDERED.

December 16, 2025                          /s/ Indira Talwani
                                           United States District Judge